Below is an opinion of the court.

_____

DAVID W. HERCHER
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re<br><br>**John Wilson Buehler**,<br><br>           Debtor. | Chapter 13<br><br>Case No. 19-31696-dwh13<br><br>MEMORANDUM DECISION ON DEBTOR'S OBJECTION TO CLAIM 4 OF KAREN J. PARK<br><br>NOT FOR PUBLICATION |

**I.    Introduction**

Debtor, John Wilson Buehler, has objected[1] to the proof of claim filed by Karen J. Park for $87,539.85.

For the reasons that follow, I will allow the claim as a nonpriority claim for $16,157.52, the portion of the claim attributable to the tax debt to the Oregon Department of Revenue, and disallow the balance of the claim, which is attributable to the debt to the Internal Revenue Service.

---

[1] Docket item (DI) 41.

Page 1 – MEMORANDUM DECISION ON DEBTOR'S OBJECTION TO CLAIM 4 OF etc.

## II. Facts

The parties have agreed[2] that I may decide the claim objection based on the evidence, exhibits, testimony, and argument at the hearings on Park's objection to plan confirmation on September 26, 2019,[3] and October 1, 2019,[4] the facts and arguments alleged in the claim objection, Park's response,[5] the exhibits and arguments therein, and the pleadings filed in this case.

### A. *The divorce judgment's allocation of tax debts*

The parties were married from 1994 until 2009[6] and separated in March 2008.[7] Their stipulated divorce judgment included the following provision:

> "Each party shall pay the debts incurred by that party since their separation on March 15, 2008. The parties have by separate agreement distributed the debts and liabilities incurred before the separation. If any creditor asks the party not responsible for a debt to pay all or part of the debt, and that party does so, the party responsible for that debt shall reimburse the other party the amount paid together with interest . . .."[8]

The separate document by which they specified division of their debts includes entries for the IRS and the ODR, in both cases adding "to and including tax year 2007." Both entries specify "50%" for each party.[9]

---

[2] DI 81.
[3] DIs 62, 64-67.
[4] DI 70.
[5] DI 69.
[6] Proof of claim (Claim) 4-1 at PDF 19.
[7] Claim 4-1 at PDF 21.
[8] Claim 4-1 at PDF 21, ¶ 10.
[9] Claim 4-1 at PDF 17.

Page 2 – MEMORANDUM DECISION ON DEBTOR'S OBJECTION TO CLAIM 4 OF etc.

### B. Buehler's prior chapter 7 cases

Buehler obtained chapter 7 discharges in 2006[10] and 2014,[11] and as a result the tax agencies are no longer able to collect the tax debts directly from him. The parties agree that no part of his obligation to reimburse Park was discharged in either chapter 7 case—regardless whether the obligation arose before or after 2006—because property-settlement debts are not dischargeable in chapter 7.[12]

### C. Proof of claim

The proof of claim asserts the claim's priority as a domestic-support obligation under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

In the last page of the proof of claim, which Park labels a supplement, she specifies the following components of the total amount of her claim of $87,539.85:[13] amounts due to the IRS for 2005 through 2006 of $43,196.15 and for 2007 of $27,483.69 and to the ODR for 2003 through 2006 of $6,710.14 and for 2007 of $10,149.87.[14] The other attachments to the proof of claim supports the supplement's claim components.

#### 1. IRS

As support for the IRS figures in the supplement, a page in the claim entitled Payoff Calculator[15] lists amounts for 2005 through 2007, including assessed tax and penalty and interest through both September 5 and October 5, 2018. The following table sets forth the calculator dollar figures for tax and interest to the IRS through October 5, 2018, one-half of those amounts, and the corresponding amounts in the supplement:

---

[10] Case no. 05-47930-elp7, DI 18.
[11] Case no. 14-32612-rld7, DI 25.
[12] 11 U.S.C. § 523(a)(15).
[13] Claim 4-1 at PDF 2.
[14] Claim 4-1 at PDF 25.
[15] Claim 4-1 at PDF 4.

Page 3 – MEMORANDUM DECISION ON DEBTOR'S OBJECTION TO CLAIM 4 OF etc.

| IRS | With interest through 10/5/2018 | One-half | Supplement |
|---|---|---|---|
| 2005 | 50,744.20 | 25,372.10 | |
| 2006 | 35,648.11 | 17,824.06 | |
| 2005 & 2006 | 86,392.31 | 43,196.16 | 43,196.15 |
| 2007 | 54,967.37 | 27,483.69 | 27,483.69 |
| **Totals** | **141,359.68** | **70,679.85** | **70,679.84** |

The calculator and supplement figures correspond. The supplement itself states that Park is litigating with the IRS regarding the enforceability of the 2005 and 2006 amounts and that if those amounts are determined to be unenforceable, her claim would be reduced by those amounts.

  **2.**   **ODR**

As support for her ODR supplement figures, a five-page spreadsheet[16] shows her calculation of the ODR debts for 2003 through 2006. The following table sets forth from the spreadsheet the dates and dollar amounts of the total due for the year, including amounts paid and unpaid, one-half of the totals, payments either party made, interest calculated through October 10, 2018, and the amount by which the parties over- or underpaid their shares:

| ODR | Total | One-half | Park over (under) payment | Buehler over (under) payment | Interest through 10/10/2018 | Total due to Park |
|---|---|---|---|---|---|---|
| 2003 | 4,549.06 | 2,274.53 | (1,874.53) | 1,874.53 | (239.40) | (2,113.93) |
| 2004 | 20,703.16 | 10,351.58 | 979.64 | (979.64) | 231.15 | 1,210.79 |
| 2005 | 6,888.99 | 3,444.50 | 3,444.49 | (3,444.49) | 463.68 | 3,908.17 |
| 2006 | 6,879.40 | 6,217.94 | 2,769.24 | (2,769.24) | 233.38 | 3,002.62 |
| **Totals** | **39,020.61** | **22,288.55** | **5,318.84** | **(5,318.84)** | **688.81** | **6,007.65** |

Buehler has not objected to the inclusion in the claim of postpetition interest.

---

[16] Claim 4-1 at PDF 10-14.

Page 4 – MEMORANDUM DECISION ON DEBTOR'S OBJECTION TO CLAIM 4 OF etc.

The pages preceding the ODR spreadsheet appear to be printouts from the ODR website for 2004 through 2007. The website figures for 2004 and 2005 don't correspond to the spreadsheet figures: the 2004 website shows payments from January 30, 2013, totaling $13,403.22, rather than the spreadsheet showing payments from July 19, 2011, totaling $20,703.16; and the 2005 website shows payments from January 10, 2017, totaling $8,828.64, rather than the spreadsheet showing payments from January 6, 2017, totaling $6,888.99. Despite those discrepancies, Buehler has not taken a position on the dollar amounts due, so I accept the spreadsheet calculations. The 2006 website does support the spreadsheet figures.

The sum of the spreadsheet amounts, with interest, is shown correctly as totaling $6,007.65.[17] The corresponding supplement entry of $6,710.14 is $702.48 more than the sum of the spreadsheet amounts, apparently in error.

The 2007 website shows a total amount, entirely unpaid, of $20,299.74, one-half of which is $10,149.87, which is the 2007 ODR supplement amount. The 2007 website's indication that no payments have been made is consistent with the absence of any treatment of 2007 in the ODR spreadsheet.

### 3. Summary of paid and unpaid claim amounts

The following table summarizes the paid and unpaid dollar amounts of the IRS and ODR debts:

| Year & paid or unpaid | IRS | ODR | Total |
|---|---|---|---|
| 2003 paid | 0.00 | (2,113.93) | (2,113.93) |
| 2004 paid | 0.00 | 1,210.79 | 1,210.79 |
| 2005 paid | 0.00 | 3,908.17 | 3,908.17 |
| 2006 paid | 0.00 | 3,002.62 | 3,002.62 |
| 2007 paid | 0.00 | 0.00 | 0.00 |
| **Subtotal** | **0.0** | **6,007.65** | **6,007.65** |

---

[17] Claim 4-1 at PDF 14.

Page 5 – MEMORANDUM DECISION ON DEBTOR'S OBJECTION TO CLAIM 4 OF etc.

Case 19-31696-dwh13    Doc 86    Filed 02/24/20

| Year & paid or unpaid | IRS | ODR | Total |
|---|---:|---:|---:|
| 2003 unpaid | 0.00 | 0.00 | 0.00 |
| 2004 unpaid | 0.00 | 0.00 | 0.00 |
| 2005 unpaid | 25,372.10 | 0.00 | 25,372.10 |
| 2006 unpaid | 17,824.06 | 0.00 | 17,824.06 |
| 2007 unpaid | 27,483.69 | 10,149.87 | 37,633.56 |
| **Subtotal** | **70,679.85** | **10,149.87** | **70,679.85** |
| **Total** | **70,679.85** | **16,157.52** | **86,837.37** |

The difference between the total amount of the claim supplement and the total amount in the preceding table, $702.48, is attributable to the difference between the sum of the ODR amounts for 2003 through 2006 in the spreadsheet and the supplement.

### D.    *Buehler's claim objection*

Buehler's objection disputes Park's claim to DSO priority.

Regarding the claim amount, Buehler states that Park hasn't paid the total claim amount of $87,539.85. In the claim-objection form, he asks that the claim be entirely disallowed. In the attached narrative, he describes the claim as contingent on future payment by Park and characterizes as future payment as speculative because she may successfully establish that the debt is uncollectible, or she might negotiate a reduction of the debt or simply fail to pay it before its collection becomes time-barred. He also argues that the government might forgive or settle the debt in the future. Buehler asserts that the claim should be allowed as a nonpriority claim in the amount she has actually paid toward the joint tax obligations, with an offset for sums he has contributed toward that debt. The objection does not state the amount that Buehler believes Park has paid or the amount of the claim he believes should be allowed, nor does he address any of the figures or calculations in the proof of claim.

Page 6 – MEMORANDUM DECISION ON DEBTOR'S OBJECTION TO CLAIM 4 OF etc.

Case 19-31696-dwh13    Doc 86    Filed 02/24/20

### E. Park's response to the claim objection

In Park's response to the claim objection,[18] she re-asserts DSO priority.

Regarding the claim amounts, she describes the claim as including a liquidated amount of $6,710.14 and a contingent amount of $80,829.71. She describes the contingency as her payment of any part of Buehler's share of the unpaid tax debt.

### F. Testimony

Park testified that she is currently unable to pay the IRS tax debt and that it is in "uncollectible status."[19] She expressed no expectation that she will ever actually pay any more of it.[20] The IRS has begun litigation in an attempt to reduce her obligation to a judgment that will remain potentially collectible for a longer period of time.[21] She hopes to establish that the IRS debt for 2005 and 2006—about one-half of the total amount of her claim—is unenforceable as time-barred.[22] She said that the IRS is not currently trying to foreclose on her residence.[23]

Although she has made no payments on the IRS debt since the divorce,[24] she has made payments throughout the past few years on the ODR debt.[25] She is in a payment plan on which she will have paid more than one-half of the remaining 2007 ODR debt in eight years.[26]

---

[18] DI 69.
[19] Trial testimony of September 26, 2019 (Testimony), at 2:16, 2:20 p.m.
[20] Testimony at 2:16 p.m.
[21] Testimony at 2:29 p.m.
[22] Claim 4-1 at PDF 25.
[23] Testimony at 2:15 p.m.
[24] Testimony at 2:16 p.m.
[25] Claim 4-1 at PDF 11-13.
[26] Testimony at 2:18 p.m.

Page 7 – MEMORANDUM DECISION ON DEBTOR'S OBJECTION TO CLAIM 4 OF etc.

Case 19-31696-dwh13    Doc 86    Filed 02/24/20

### III. Discussion

#### A. *Priority status*

I concluded during the confirmation process that Park's claim is not a priority claim.[27] That issue was litigated at the confirmation hearing. And it was necessary to my decision to confirm the plan, because the plan would have been infeasible and therefore unconfirmable if Park's claim were a priority claim.

Because the question of priority status was actually litigated and resolved and was essential to my decision to confirm the plan, issue preclusion bars its relitigation here.[28] I adhere to my conclusion that the claim is not entitled to priority.

#### B. *Amount of the claim*

##### 1. **Claim estimation**

Buehler argues that Park's claim is contingent because his liability will be triggered only if and when she actually pays the claim. He says: "Ms. Park has not paid this sum; rather, if she pays the total claim in the future, she seeks an Order requiring reimbursement." She appears to interpret this statement to mean that he asserts that he need not pay anything unless and until she pays the entire amount of the debt.

If that were Buehler's position, it would be incorrect—but I don't believe that it is his position. I interpret his statement to mean that he asserts that she will only be entitled to recover *the entire amount* from him when she pays the entire amount. He does not deny that she may recover a lesser amount if and when she pays a lesser amount—indeed, he goes on to argue that her claim should be allowed "in the sum she has actually paid," which shows that he does not

---

[27] DI 71 (audio recording of October 1, 2019, oral decision overruling Park's objection to confirmation of Buehler's plan).
[28] *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 748-49 (2001)).

Page 8 – MEMORANDUM DECISION ON DEBTOR'S OBJECTION TO CLAIM 4 OF etc.

Case 19-31696-dwh13    Doc 86    Filed 02/24/20

dispute her right to recover a portion of the debt without first paying all of it. His point is only that her right to recover from him is limited to what she has paid.

As a matter of nonbankruptcy law, I agree with Buehler. His liability to Park at any given moment is limited to what she has already paid. He correctly describes the claim as contingent.

But 11 U.S.C. § 502(b)(1) doesn't permit me to disallow a claim just because it is contingent. Instead, section 502(c) requires the court to "estimate . . . a contingent or unliquidated claim, the fixing or liquidation of which . . . would unduly delay the administration of the case[.]" The approach of estimating, rather than disallowing, contingent claims is part of the Bankruptcy Code's overall purposes of treating creditors alike and giving the debtor an economic fresh start. Those purposes require as sharp as possible a distinction between pre- and postpetition claims. Prepetition claims are allowable in the bankruptcy case, and they are also dischargeable. Postpetition claims are neither allowable nor dischargeable in chapter 13 (with narrow and irrelevant exceptions). As long as a claim is sufficiently defined to be identifiable as of the petition date, it's in the interests of debtor and creditors alike that the claim be allowed and discharged, rather than disallowed and not discharged.

Because Park's right to reimbursement based on future payments has not yet come to fruition, it is contingent. Because payments to unsecured creditors in this chapter 13 case cannot commence or be concluded until the amount of Park's claim is determined, fixing of that claim would unduly delay administration of this case, and I therefore must estimate the eventual amount of the claim based on the information I have.

### 2. Estimation of debt for unpaid IRS taxes

To estimate the claim for unpaid IRS tax debts for 2005 through 2007, I must determine whether Park will eventually pay more than one-half of the tax debt and then multiply the

Page 9 – MEMORANDUM DECISION ON DEBTOR'S OBJECTION TO CLAIM 4 OF etc.

Case 19-31696-dwh13    Doc 86    Filed 02/24/20

amount that she will pay in excess of one-half by the likelihood that she will do so. With respect to the IRS debt for 2005 through 2007, if I determine that she is likely to pay more than one-half of the amount of any year's debt, I must then determine whether the divorce judgment entitles her to payment from him if she pays more than one-half of one year's tax debt or only if she pays more than one-half of the entire amount due to the IRS. That issue is not present for the ODR debt, as to which only 2007 is unpaid.

I find that there is no material likelihood that Park will pay more than one-half of any one of the amounts due to the IRS for 2005 through 2007. She has taken the position in the district-court litigation that her obligations for 2005 and 2006 taxes are time-barred, and she presented no evidence or argument that would allow me to conclude otherwise. Also, she testified that she had made no payments to the IRS since the divorce and has expectation that she will ever do so.

Part of her argument to the Clackamas County Circuit Court in prepetition litigation with Buehler was that her home is subject to IRS liens. The existence of liens—at least until they become time-barred—raises the specter that an involuntary payment to the IRS could occur. The IRS could end up receiving at least some payment if it forecloses on the house (which she testified is not currently underway), a senior consensual creditor forecloses and there is a resulting surplus is paid to the IRS, or Park elects to sell the house or refinance her existing mortgages, necessitating payment to the IRS. But she offered no evidence of the amount of her equity in the house or the likelihood that any of those events will occur.

Because there is no material likelihood that Park will ever pay more than one-half of any of the IRS debt for 2005 through 2007, I need not address whether the more-than-one-half test applies to the IRS debt on a year-by-year or aggregate basis.

Page 10 – MEMORANDUM DECISION ON DEBTOR'S OBJECTION TO CLAIM 4 OF etc.

Case 19-31696-dwh13    Doc 86    Filed 02/24/20

### 3. Estimation of debt for unpaid ODR taxes

The only unpaid ODR tax debt is for 2007, for which no payments have been made. From Park's testimony that she is making payments to the ODR on a payment plan, and in view of her apparently regular payments to the ODR for the other tax years, I find that she will eventually pay the entire 2007 amount, entitling her to reimbursement for one-half, or $10,149.87.

### 4. Noncontingent claim for paid ODR taxes

On account of her payments on the ODR debt for 2003 through 2006, Park has a noncontingent claim for $6,007.65, the amount by which her payments (after netting Buehler's 2003 overpayment) exceeded one-half of each year's debt.

## IV. Conclusion

I will allow the claim as a nonpriority unsecured claim for $16,157.52, the sum of the net $6,007.65 that she paid toward the 2003 through 2006 ODR debt in excess of one-half of the total, plus $10,149.87 as an estimated claim for her expected payment of the 2007 debt in excess of one-half the total. I will disallow the balance of the claim, including the amounts due to the IRS.

I will prepare an order.

# # #

Page 11 – MEMORANDUM DECISION ON DEBTOR'S OBJECTION TO CLAIM 4 OF etc.

Case 19-31696-dwh13    Doc 86    Filed 02/24/20

2/24/2020 4:12:00 PM

Page 12 – MEMORANDUM DECISION ON DEBTOR'S OBJECTION TO CLAIM 4 OF etc.

Case 19-31696-dwh13    Doc 86    Filed 02/24/20